**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **INDECK POWER EQUIPMENT COMPANY, an Illinois corporation** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| | ) | **No. 03 C 7494** |
| **v.** | ) ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **RING POWER CORPORATION, a Florida corporation** | ) ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Before this Court are a host of motions submitted by the parties in this contractual

dispute. As a starting point, both Plaintiff Indeck Power Equipment Company ("Indeck" or

"Plaintiff") and Defendant Ring Power Corporation ("Ring" or "Defendant") have submitted

motions for summary judgment.

Plaintiff requests that this Court grant summary judgment in its favor on Count II of its

amended complaint, Defendant's first through seventh affirmative defenses, and Count I of

Defendant's counterclaim. Plaintiff's motion for summary judgment is DENIED.

Defendant requests that this Court grant judgment in its favor with respect to Counts II

and III of Plaintiff's complaint. Defendant's motion for summary judgment with respect to

Counts II and III is DENIED. Defendant also requests that this Court either grant summary

judgment in its favor with respect to Count I of Plaintiff's complaint, or that this Court dismiss

Count I. Defendant's motion for summary judgment as to Count I of Plaintiff's complaint is GRANTED, rendering Defendant's motion to dismiss Count I moot.

Also before this Court is Defendant's motion to strike portions of Plaintiff's response and statement of additional facts in response to Defendant's Local Rule 56.1(a)(3) statement: this motion is GRANTED insofar as Plaintiff's submissions are unsupported by the record or contain improper argument. Defendant has also submitted a motion to strike portions of declaration and deposition testimony that contradict prior testimony: this motion is DENIED. Finally, Defendant has moved to withdraw its second affirmative defense: this motion is GRANTED.

## Factual and Procedural Background[1]

Plaintiff Indeck Power Equipment Company is an Illinois corporation in the business of buying and leasing permanent and temporary power plant equipment. Defendant Ring Power Corporation is a Florida company in the business of, among other things, selling and leasing such power plant equipment.

---

[1]Unless otherwise indicated, all facts are taken from the parties' voluminous Rule 56 materials. This Court will only review Rule 56 statements that are in line with its Standing Order on Summary Judgment. Portions of responses that either 1) were unsupported by the portion of the record cited or 2) improperly contained argument instead of concise admissions or denials, will be stricken. To the extent that Ring's motion to strike refers to such responses, the motion is GRANTED.

Additionally, the parties have submitted a significant amount of evidence regarding other facts are that allegedly both undisputed and material (or disputed and/or immaterial, depending on whether the party commenting is the party proffering the evidence or the one against whom evidence is being proffered). Much of this material is irrelevant and therefore is not specifically addressed in this Order.

*The 1999 Transaction*

This case involves a series of transactions between Plaintiff and Defendant. The first transaction occurred in 1999, when Plaintiff contracted with Defendant for the purchase of a 1750KW generator. According to Plaintiff, it was led to believe–based on misrepresentations by Defendant, including misrepresentations in Defendant's advertising brochures–that it was purchasing a Caterpillar generator that was equipped with a "utility grade" power module as opposed to a "utility convertible" power module.[2] Plaintiff claims it did not discover that it received the wrong generator until 2004. Defendant disagrees, claiming that it did not mislead Plaintiff and delivered the generator it advertised.

*The 2001 Transactions*

In 2001, on the heels of an energy crisis that affected the West Coast, Plaintiff again approached Defendant with the intent of purchasing generators. Gerald Forsythe, CEO of Indeck, saw a "major opportunity" for Indeck to profit from the crisis by purchasing diesel generators and leasing them to utility companies. Forsythe claims that the specific type of generators he wanted were Caterpillar generators with "utility grade" power modules. On March 7, 2001, he contacted Lyndon Schultz, an assistant used engine sales manager at Ring. Forsythe told Shultz that he wanted as many "utility grade power modules" as he could "get [his] hands on" for "early delivery."

---

[2] The parties have submitted evidence parsing out the differences between the model of generators that both parties agree that Plaintiff received– a model of generators with "utility convertible" power modules– and the model of generators with "utility grade" power modules. It is not necessary to explain those differences at this stage of the proceedings. This Court will assume for the purposes of this order that there is a qualitative difference between the two models.

At this point, the accounts begin to differ. The parties do not agree as to what type of generators were discussed during the conversation, nor do they agree as to what understanding the parties shared at the end of the conversation. Plaintiff claims that the parties agreed during the conversation that Plaintiff would be sold eight utility grade units. Forsythe has stated that the term "utility convertible" was not discussed during the conversation. Defendant claims that at the end of the conversation, both parties understood that Plaintiff would get utility convertible generators. Schultz has stated that he explained to Forsythe that the only generators available for rental were eight Caterpillar utility convertible units on order for Defendant's own fleet. He states that he explained that utility convertible "function as utility grade."

Following the conversation, Defendant sent Plaintiff a price quotation for the "8 NEW CATERPILLAR XQ2000" generators. The quotation specified that the generators at issue were "SOUND ATTENUATED, UTILITY GRADE, 3516B-DITA DIESEL POWER, POWER MODULES WITH CHASSIS, RATED 2000KW..." and that each generator was to have "CAT CONVERTIBLE UTILITY GRADE PANELS WITH AUTO PARALLELING SWITCHGEAR."

Then, on March 8, 2001, Plaintiff issued eight purchase orders, each for a "NEW CATERPILLAR XQ2000, TRAILER GENERATOR." The purchase orders described the generators as "SOUND ATTENUATED, UTILITY/ GRADE,/ 3516B-DITA DIESEL POWER/POWER MODULES WITH CHASSIS, RATED/2000KW/..." with "-CAT CONVERTIBLE UTILITY GRADE/PANELS WITH AUTO PARALLELING/-SWITCHGEAR." The parties later agreed to the sale of another 16 generators. Plaintiff issued another 16 purchase orders on March 16, 2001. Those orders used the same language as the set

before them, describing the units as utility grade and having CAT convertible utility grade panels with auto paralleling.

All 24 of the 2001 purchase orders included boilerplate provisions stating that Plaintiff was entitled to terminate the order if the Seller became insolvent or had serious financial troubles or if there was a "breach or failure to perform by Seller of any of the provisions or requirements of this Order." According to Defendant, it felt that the boilerplate language was too broad. In response, Forsythe signed a letter on March 21, 2001 stating that the purchase orders were expressly "non cancelable."

In June 2001, the generators were ready for Plaintiff to pick up. Plaintiff sent agents to inspect the generators. The parties disagree as to the scope and purpose of the inspections. Forsyth has stated that the agents made superficial, mostly cosmetic inspections of the generators. Schultz, on the other hand, has stated that the agents completed more in-depth inspections.

Before accepting the generators, Plaintiff required Defendant to add latches, paint wheels, and re-rig some hoses under the Generators' containers. Plaintiff sent agents to inspect the generators again in July, 2001. Defendant completed the required tasks, and Plaintiff paid in excess of $15.5 million for the generators.

Plaintiff claims it first realized in the first half of 2002 that the generators it received in 2001 were not the generators it ordered when a new Indeck employee who formerly was with Caterpillar told the company's president that it had received utility convertible generators. Plaintiff claims that it then investigated the employee's claim and determined he was correct. On September 4, 2002, Plaintiff's president sent a letter to Defendant stating that Defendant had

delivered the wrong generators in 2001 and requesting that the generators be exchanged for generators with utility grade power modules. Defendant refused the request to exchange the generators. Plaintiff claims that it later discovered that it also did not receive the correct generator in the 1999 transaction.

Plaintiff originally filed suit in the Circuit Court of Cook County on September 26, 2003. Defendant filed a notice of removal in this Court on October 23, 2003. Plaintiff filed an amended complaint on May 19, 2004. The amended complaint, in addition to other changes, incorporated a claim related to the 1999 generator purchase.

## A. Summary Judgment Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Kamler v. H/N Telecommunication Services, Inc., 305 F.3d 672, 677 (7th Cir. 2002). A genuine issue of material fact exists for trial when a reasonable jury could return a verdict for the party opposing summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995). When determining whether a genuine issue of material fact exists, the Court considers the evidence and all proper inferences therefrom in the light most favorable to the non-moving party. See Neuma, Inc. v. AMP, Inc. 259 F.3d 864, 871 (7th Cir. 2001).

Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant must respond to the motion with evidence setting forth

specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(e); Michael v.

St. Joseph County, et al., 259 F.3d 842, 845 (7th Cir. 2001); Albiero v. City of Kankakee, 246

F.3d 927, 932 (7th Cir. 2001).  Rule 56(c) mandates the entry of summary judgment against a

party "who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and in which that party will bear the burden of proof at trial." Celotex, 477 U.S.

317, 322 (1986).  A scintilla of evidence in support of the non-movant's position is not sufficient

to oppose successfully a summary judgment motion; "there must be evidence on which the jury

could reasonably find for the [non-movant]." Anderson, 477 U.S. at 250.


### B. Analysis

Count II and Defendant's Motion to Strike

Both parties agree that Plaintiff received generators with Utility Convertible power

modules in 2001: at issue is whether Plaintiff was supposed to receive those generators instead of

generators with Utility Grade power modules.

The basic premise of Plaintiff's argument with respect to its breach of express warranty

claim is fairly simple: it claims that it ordered generators with Utility Grade power modules  and

that it received generators with Utility Convertible grade power modules.  As a corollary,

Plaintiff claims that Utility Grade power modules are not the same as Utility Convertible grade

power modules.  In its motion for summary judgment, Plaintiff requests that this Court determine

that Defendant, by delivering the wrong generators, violated the express terms of the 2001

Purchase Orders.

The basic premise of Defendant's argument, while slightly more complicated that Plaintiff's, is also fairly simple: it claims that Plaintiff ordered generators with utility grade power modules and that it received generators with a specific type of utility grade power module known as a Utility Convertible power module. Defendant argues that the generic term "utility grade," among those in the generator industry, encompasses both Utility Grade power modules and Utility Convertible power modules.[3] In its motion for summary judgment, Defendant requests that this Court find that it did not violate the express terms of the 2001 Purchase Orders.

Unfortunately, the simplicity ends there. Ideally, the purchase orders between the parties for the sale of the generators in question would clarify whether Plaintiff ordered Utility Convertible generators or not. In this case, the purchase orders do not.

According to Plaintiff, the inclusion of the words "UTILITY/GRADE," on the first page of the purchase orders is enough to indicate that Plaintiff ordered Utility Grade units. Defendant, however, contends Plaintiff's interpretation is incorrect and does not make sense when the contract is read as a whole. Defendant points to the terms "CAT CONVERTIBLE UTILITY GRADE/PANELS WITH AUTO PARALLELING/-SWITCHGEAR" as clarifying that the specific type of utility grade machines Plaintiff ordered are utility convertible machines. In support of its reading, Defendant offers the testimony of a 30(b)(6) witness from Caterpillar, as well as testimony from its own employee, Lyndon Schultz.

---

[3] This Court is somewhat confused by this statement. Perhaps Defendant is advancing a theory analogous to the theories advanced by those who believe that in certain parts of the country, ordering a "Coke" might mean ordering a soft drink other than Coca-Cola. See, e.g., Matthew T. Campbell, *Generic Names for Soft Drinks by County*, at http://www.popvssoda.com/countystats/total-county.html.

In Illinois, courts will review a contract between parties in light of the "four corners" rule. According to the Seventh Circuit, "there is plenty of judicial language, from Illinois cases as from cases from other states, that if the language of a contract appears to admit of only one interpretation, the case is indeed over...This is the 'four corners' rule." AM Intern, Inc. v. Graphic Management, 44 F.3d 572, 574 (7th Cir. 1995).

In order to move beyond the four corners of a contract and proffer testimony as to its meaning, a party must first establish that the contract is ambiguous. A simple disagreement as to the meaning of a contract is not sufficient to render the contract ambiguous. See Emergency Med. Care, Inc. v. Marion Mem'l Hosp., 94 F.3d 1059, 1061(7th Cir. 1996). Under Illinois law, a contract is ambiguous only if it is 'reasonably and fairly susceptible to more than one construction.'" Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Products, 212 F.3d 373, 377, fn. 2 (7th Cir. 2000)(citing Omnitrus Merging Corp. v. Illinois Tool Works, Inc., 628 N.E.2d 1165, 1168 (Ill. App. Ct. 1993)(internal quotation marks and citation omitted)).

Parties may show that a contract is susceptible to more than one construction by alleging that the contract contains terms that are intrinsically or extrinsically ambiguous. In Illinois, "[i]ntrinsic ambiguity exists when the agreement itself is unclear, and extrinsic ambiguity exists when a perfectly clear agreement is unclear when applied to the real-world context of the deal. See FDIC v. W.R. Grace & Co., 877 F.2d 614, 620 (7th Cir.1989)."[4]

---

[4]Ordinarily, courts first determine if a contract is intrinsically ambiguous. When doing so, courts will "not add another term, about which the agreement is silent, to reach a more equitable result, nor can any word be deleted from the agreement to change the plain, ordinary meaning of the contractual terms." See Home Ins. Co. v. Chicago and Northwestern Transp. Co., 56 F.3d 763, 769 (7th Cir. 1995)(citations omitted).

The concept of intrinsic ambiguity is undoubtedly helpful when dealing with ordinary

Defendant in this case offers evidence that the purchase orders are "extrinsically ambiguous."  When a party seeks to show that a contract is extrinsically ambiguous, it must offer "objective evidence" that demonstrates that "apparently clearly contract language means something different from what it seems to mean."  See AM Intl. Inc, 44 F.3d at 575 .  Objective evidence is "evidence of ambiguity that can be supplied by disinterested third parties: evidence that there was more than one ship called Peerless, or that a particular trade uses 'cotton' in a nonstandard sense."  Id.  Subjective evidence, in comparison, is "testimony of the parties themselves as to what they believe the contract means."  See id.

The problem with subjective evidence, according to the Seventh Circuit, is that "[s]uch testimony is invariably self-serving, being made by a party to the lawsuit, and is inherently difficult to verify."  See id.  Objective evidence, in comparison, is more difficult to "fake."  See id.  The Illinois Commercial allows extrinsic evidence, including course of performance, course of dealing, and usage of trade to be considered when reasonably consistent with the express terms of the contract.  See Brooklyn Bagel Boys, 212 F.3d at 380 (citing 810 Ill Comp Stat. §§ 5/2-208(2), 5/2-202).

---

language which is familiar to the common reader.  In addition, reviewing courts often turn to examples of how previous courts have defined the plain meaning of disputed terms or look to dictionaries for definitions of disputed terms.  When dealing with contractual terms such as "convertible utility grade panels with auto paralleling switchgear" however, the concept of intrinsic ambiguity is difficult to apply.   This Court cannot, without going beyond the four corners of the documents, determine that there is an intrinsic ambiguity in the purchase orders.  This Court is unable to find prior case law defining the specific terms disputed in this case.  And perhaps not surprisingly, dictionaries are similarly unhelpful.

Given Defendant's reliance on extrinsic evidence as a means of indicating ambiguity in the contract, this Court will assume that Defendant is not contending that the contract is intrinsically ambiguous.

In this case, Defendant offers sufficient evidence to indicate that the terms of the purchase orders are susceptible to more than one reasonable interpretation. The orders do use the term "utility grade" and seem to support Plaintiff's reading that it was not supposed to receive generators with utility grade power modules. But Defendant offers a plausible alternative interpretation by pointing to the testimony of Caterpillar employee Lance Dubea on conversion panels as an indication that the generators ordered were Utility Convertible units.

Dubea testified that only the Utility Convertible module has utility conversion panels, that the phrase "CAT Convertible panel" is not an accurate description of any other power module, and that there are no "Conversion or Convertible" panels in a Utility Grade power module. Dubea's testimony, as extrinsic evidence, is objective and can be taken into consideration by this Court. Dubea's testimony regarding the purchase order language on convertible panels does support Defendant's claim that the transactions were for generators with utility convertible power modules.

Plaintiff does not present a persuasive argument for why Dubea's testimony should be discredited. Instead, Plaintiff reconciles the conflict between the phrase utility grade on page one and the description of the panels are page two by first arguing that extrinsic evidence is inadmissible and second arguing that the terms "utility convertible" do not appear in that exact order anywhere in the contract. Plaintiff's arguments do not establish that Defendant's claim to an alternative reading is without merit.

Defendant also offers the affidavit of Lyndon Schultz, Defendant's employee involved in the transaction, as extrinsic evidence on how the purchase orders should be read. Shultz states in

his declaration that "[t]he Utility Convertible model is the only Caterpillar generator model with conversion panels." The testimony of Schultz, one of Defendant's employees, on the other hand, is not objective and therefore will not be considered when determining if the purchase orders are ambiguous. See Commonwealth Ins. Co. v. Titan Tire Corp., 2004 WL 2439727, *4 (7th Cir. 2004) ("Such evidence from a party's agent/employee/executive is frequently self-serving and inherently difficult to verify, which is exactly why such subjective evidence of ambiguity is inadmissible and should be disregarded, as it was in this case." (citations omitted)). Though Schultz's testimony is inadmissible, the testimony of Dubea is sufficient to suggest that there may be more than one reasonable interpretation to the purchase orders, thereby defeating Plaintiff's motion for summary judgment.

Defendant is not content to defeat Plaintiff's motion for summary judgment; it also requests summary judgment in its favor. Defendant attempts to reconcile the language on page two with the language on page one by stating that in the words "UTILITY GRADE" on the first page really signify a generic term that includes both Utility Grade and Utility Convertible generators.

Both sides also attempt to use a host of conversations between parties as evidence that their respective interpretations of the purchase orders are correct. Both parties, in their filings before this Court, have submitted hundreds of pages of shoddily bound exhibits that use confusing deposition testimony to purportedly illustrate that no issue of material fact remains.

(Parties are reminded that the sheer quantity of evidence submitted does not necessarily correlate with a favorable judgment.[5]).

In support of its motion for summary judgment, Defendant offers tortured readings of Forsythe's deposition testimony. For example, in deposition Defendant's lawyer asked Forsythe, "when you used the term utility grade in discussions with Mr. Schultz, you were using that term in some generic sense, not specific to Caterpillar; is that correct?" Plaintiff's attorney objected, stating "I don't know what you mean by the word generic." Forsythe then answered: "That's correct." Defendant's attorney then asked Forsythe, "Do you know what I mean by the word 'generic'?" Forsythe answered, "Assuming it could apply to another manufacturer." Defendant's attorney then asked, "Or as generally used in the industry; is that fair?" Forsythe never answered the question after being given this new definition by Defendant's attorney. Plaintiff's counsel objected, noting "You have no foundation for that in case you're interested in why." Defendant's counsel responded, "I'm not interested in why" and then changed the topic.

Defendant returns to this confusing exchange in its motion to strike portions of Forsythe's declaration and deposition testimony that contradict Forsythe's prior testimony. According to Defendant, the above conversation apparently establishes that Forsythe first used the term utility

---

[5]While this Court is in the process of issuing reminders, counsel are also advised that depositions should be used to clear up issues of material fact rather than create them. Based on a review of the many depositions submitted on this case, it appears that such was not the goal of either party during these depositions. Counsel are also reminded that depositions are to be conducted in a civil manner: it is a sad state of affairs when a witness finds it necessary to comment on the lack of "love" between lawyers. Although this Court is not advocating that opposing counsel love each other, they can, at least, behave civilly. Counsel are advised that lawyers practicing before this Court are expected to treat witnesses and opposing counsel with respect.

grade to "in a generic sense as used in the industry and not specifically with regard to Caterpillar or any particular Caterpillar product." Defendant then argues that Forsythe "gives a new meaning to utility grade" in his later declaration. While parties are not permitted to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony (see, e.g., Buckner v. Sam's Club, Inc., 75 F.3d 290, 292 (7th Cir. 1996)), the general rule is not violated in this case. Forsythe did not originally state what Defendant claims he stated, which unsurprisingly makes Defendant's motion to strike uncompelling. Forsythe's later testimony is an attempt to clarify what he meant by the term utility grade in his earlier conversation with Schultz, a clarification that never fully came to light in deposition at least in part because opposing counsel asked confusing questions, did not clarify what he meant by his questions, and then did not allow Forsythe to answer those questions before moving on to other points.

Defendant also claims that Forsythe's declaration contradicts his prior testimony on the issue of the non-cancellation clause. Again, Defendant fails to establish that the later testimony contradicts rather than clarifies the earlier testimony. Forsythe's testimony is not like that of the plaintiff in Buckner, who submitted in her later affidavit a "highly specific description" that appeared "to be an effort to undo (contradict) the effects of deposition testimony and thereby establish the missing causal link..." See Buckner, 75 F.3d at 293. Instead, Forsythe's declaration explains that the submission of two additional pieces of evidence refreshed his recollection regarding the non-cancellation clause and related conversations. Moreover, the testimony in the declaration does not contradict anything he testified to previously: it merely supplements the earlier testimony that was sparse because of a lapse in memory.

Finally, Defendant also claims that "Forsythe's 'corrective' second deposition testimony contradicts his prior testimony and should be stricken." Based on Defendant's memorandum of law in support of its motion to strike, it is entirely unclear what Defendant is referring to as a contradiction between the two depositions. Defendant does offer two sentences related to the facts of this argument (highlighting two statements made by Forsythe regarding the attributes of utility grade machines), but fails to offer any explanation as to how those statements in any way suggest a contradiction. In short, Defendant's final request to strike is as lacking in merit as its other requests to strike.

The Seventh Circuit has noted that parties are permitted to submit supplemental affidavits "to clarify ambiguous or confusing deposition testimony." Slowiak v. Land O'Lakes, Inc., 987 F.2d 1293, 1297 (1993). That is precisely what Forsythe has done in this case. As a result, Defendant's motion to strike is DENIED in its entirety.

Neither Plaintiff nor Defendant has established that the purchase orders are unambiguous. The Seventh Circuit has noted, "if the contract is ambiguous, the contract's meaning is a question for the trier of fact." Brooklyn Bagel Boys, 212 F.3d at 377, n.1 (citing Metalex Corp. v. Uniden Corp. of Am., 863 F.2d 1331, 1333 (7th Cir. 1988)). Defendant requests that this Court go beyond the four corners of the documents to review objective evidence showing that the purchase orders are extrinsically ambiguous, and then requests that this Court rule as if they were unambiguous. Plaintiff, on the other hand, states that the orders are clearly unambiguous, submits a large amount of extrinsic evidence, and offers no solid rebuttal of Defendant's argument that the purchase orders are ambiguous.

Defendant also raises the argument that even if it delivered the wrong generators, it should be granted summary judgment because of non-cancellation language agreed to by the parties. This argument is without merit, given that Plaintiff contends it received an entirely wrong set of goods, the sale of which was not the subject of the contract. Similarly, Defendant's argument that the contracts have been "fully executed" is unconvincing. Defendant does not establish that both parties completely fulfilled their obligations under the contract: this failure is fatal to Defendant's request for summary judgment on the grounds that the contracts have been fully executed. Furthermore, Defendant does not explain why the contracts should be viewed as fully executed no later than the time specified for delivery when the purchase orders specifically allow for the return of goods even after they have been received by the buyer. In this case, Plaintiff contends that Defendant has breached the terms of the deal. The purchase orders specifically allow Plaintiff to "return to Seller all Good received" and "receive back any amounts paid" when there is a breach. In light of the fact that Defendant has not offered adequate, relevant case law and appropriate factual support for its claim that the contracts have been fully executed, this Court concludes that Defendant's argument is without merit.

Plaintiff's motion for summary judgment on Count II is DENIED. Defendant's motion for summary judgment on Count II is also DENIED. Defendant's motion to strike portions of declaration and deposition testimony that contradict prior testimony is DENIED.

Reformation

Defendant requests summary judgment defeating Plaintiff's claim for reformation. Defendant is correct in noting that there is a presumption that a written contract conforms to the intention of the parties and that the presumption must be overcome by clear and convincing evidence.  See, e.g., Michigan Ave. Nat. Bank of Chicago v. Evans, Inc., 531 N.E.2d 872, 878 (Ill.App. Ct. 1988)(internal citations omitted).  The problem in this case, however, is that the intentions of the parties are disputed, as are the meanings of the terms of the written contract.

Defendant fails to show that there are no genuine issues as to any material fact with regards to Plaintiff's reformation claim.  Defendant's argument–a full two paragraphs–states that Plaintiff does not offer evidence, and "certainly not clear and convincing evidence," that both parties mistakenly described utility convertible generators in the purchase orders rather than utility grade generators.  Plaintiff has offered evidence that it received the wrong generators. While Plaintiff may not have offered "clear and convincing evidence," it also has not requested summary judgment on Count III: presumably, during trial it will attempt to provide clear and convincing evidence that reformation is appropriate.

The evidence that Defendant offers is insufficient to justify a granting of summary judgment in its favor.  Defendant only cites the testimony of its own employee, Lyndon Schultz, to prove that both parties intended for the purchase orders to address the sale of utility convertible generators.  This testimony, as noted earlier, is disputed by Plaintiff.  Defendant's motion for summary judgment on Count III is DENIED.

Plaintiff also requests summary judgment on Defendant's counterclaim for reformation. In its single paragraph in support of this request, Plaintiff cites no legal authority or factual evidence.  Instead, Plaintiff merely states that if this Court grants its motion for summary

judgment on Count II of Plaintiff's amended complaint, it should "enter summary judgment dismissing Count I of Ring's Amended Counterclaim." The key problem with this argument, of course, is that this Court has not entered summary judgment in Plaintiff's favor with respect to Count II. Plaintiff's request for summary judgment on Count I of Defendant's counterclaims is DENIED.

Count I: Consumer Fraud

Count I of Plaintiff's complaint alleges that Defendant violated the Illinois Consumer Fraud and Deceptive Practices Act (the "Act") by making material misrepresentations in relation to Plaintiff's 1999 purchase of the 1750 KW generator. Defendant also requests that this Court either grant it summary judgment on Plaintiff's claim under the Act or dismiss Plaintiff's claim under the Act for failure to state a claim.

In order to qualify for relief under the Act, a plaintiff must either be a consumer, or, if not a consumer, show that the transaction at issue ""involves trade practices directed to the market generally or other wise implicates consumer protection concerns." See Downers Grove Volkswagen, Inc. V. Wigglesworth Imports, Inc., 546 N.E.2d 33, 41 (Ill. App. Ct. 1989)(citing Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc., 657 F.Supp. 1486, 1493 (N.D.I.L. 1987). A consumer under the Act is a party who "purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 Ill. Comp. Stat. 505/1(e). Given that Plaintiff is not a consumer–indeed, Plaintiff does not contend that it is a consumer–it must show that the transaction at issue involves trade practices directed to the market generally or otherwise

-18-

implicates consumer protection concerns.  If Plaintiff cannot make a showing of a consumer-nexus, it fails to establish that it qualifies for relief under the Act.

Plaintiff attempts to establish a consumer-nexus by arguing that Defendant's advertising practices cause harm to consumers because Defendant uses the words utility grade to describe generators that are really utility convertible in its brochures.  In its amended complaint, Plaintiff also contends that "if Indeck is granted the relief requested herein, it will serve to protect the interests of consumers because Ring will likely change its practices in a manner that eliminates or at least reduces any such deception, which will benefit consumers."  Similarly, in its memorandum in opposition to Defendant's motion for summary judgment, Plaintiff argues that "Ring's misrepresentations in its brochures have a direct effect on "consumers," as that term is defined in the act, in the market for generators–the inaccurate descriptions in Ring's brochures will lead consumers (like they led Indeck) to think they are purchasing (the deception) and actually purchase (the resulting damage) one type of generator when they are really getting another."

Plaintiff's argument focuses on Defendant's future conduct: it relies on the argument that the consumer nexus arises from the fact that Defendant will not misrepresent the generator types in future communications if Plaintiff succeeds in its claim. Plaintiff does not allege that any consumers have been damaged by prior misrepresentations by Defendant nor does it offer any other reason why it should have standing to bring suit under the Act.

Plaintiff effectively defeats its own claim for relief under the Act.  As Plaintiff states in its response to Defendant's motion, Defendant has changed its advertising "to provide more

information for the benefit of its customers" and "no longer uses the words 'utility grade' to describe generators equipped with utility convertible switchgear." Defendant offers additional evidence outside the pleadings that establishes that it has made the changes Plaintiff describes. Plaintiff, in the last round of briefing, was aware that Defendant had changed its advertising and could have responded with alternate theories as to why a consumer nexus exists in a case arising from the breach of a contract between two business entities who are not consumers of the product in question; Plaintiff did not offer any such explanation.

Plaintiff does not offer any reason why–in light of the change in advertising–a consumer nexus is present under the Act. Based on the evidence presented, Plaintiff does not have standing to bring suit. As a result, Defendant's motion for summary judgment as to Count I is GRANTED. Defendant's motion to dismiss is thereby MOOT.


<u>Affirmative Defenses</u>

Defendant's request to withdraw its second affirmative defense is GRANTED. At this stage in the proceedings, given the contractual ambiguity and significant number of factual disputes, this Court cannot rule on Defendant's remaining six affirmative defenses: consequently, Plaintiff's motion for summary judgment on Defendant's affirmative defenses is DENIED.


**C. Conclusion**

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED in its entirety. Defendant's motion for summary judgment with respect to Counts II and III is DENIED. Defendant's motion for summary judgment as to Count I of Plaintiff's complaint is GRANTED,

rendering Defendant's motion to dismiss Count I moot. Defendant's motion to strike portions of Plaintiff's response and statement of additional facts in response to Defendant's Local Rule 56.1(a)(3) statement is GRANTED insofar as Plaintiff's submissions are unsupported by the record or contain improper argument. Defendant's motion to strike portions of declaration and deposition testimony that contradict prior testimony is DENIED. Defendant's motion to withdraw its second affirmative defense is GRANTED.

Enter:

/s/ David H. Coar

David H. Coar
United States District Judge

Dated: **1/25/05**